**UNITED STATES of America, Plaintiff,**

v.

**Richard O'SHEA, Defendant.**

**No. 97–1017M.**

United States District Court,
D. Colorado.

Jan. 22, 1997.

Martha Paluch, Assistant U.S. Attorney, Denver, CO, for U.S.

Richard O'Shea, Littleton, CO, pro se.

**MEMORANDUM OPINION AND ORDER**

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court for trial on January 10, 1997. Present were the following: Martha Paluch, Assistant United States Attorney, and Defendant *pro se.* The Court heard testimony from two government witnesses, as well as argument from counsel for Plaintiff and Defendant. The matter then was taken under advisement.

**I.**

On October 29, 1996, Defendant was operating his motor vehicle at the Rocky Mountain Arsenal (RMA). Officer Lloyd Crosby, a Department of Defense law enforcement officer, was on patrol and was running radar for speed control.

Officer Crosby testified that he first observed Defendant's vehicle near the location of 7th Street and C Avenue. Officer Crosby indicated that he had set up his radar gun and it went off as it began to track Defendant's vehicle. The radar unit showed a speed of forty-five miles per hour and then was locked in. He pulled out behind Defendant's car and began pursuit. Officer Crosby testified that he stopped Defendant's vehicle and gave Defendant a violation notice for speeding.

In direct examination, Officer Crosby indicated that the radar unit that he was using had been certified as accurate in March, 1995 by a private calibration firm. The unit, a Kustom KR–105P, was found at that time to be operating correctly. Officer Crosby further testified that he had been trained and certified in the use of the radar unit. He indicated that he received additional training each year in use of the radar.

Officer Crosby indicated that the speed limit was thirty miles per hour at the point where Defendant was clocked. He testified that the speed limit increased to forty miles per hour at a point farther down the road from where Defendant was clocked by the radar unit.

Officer Crosby testified that on October 29, 1996 at approximately 8:15 a.m. he checked the radar unit. The unit had three internal tests, according to the officer. The first test indicated whether all light bulbs were working in the unit. The second test indicated whether any of the circuits in the unit were malfunctioning. The third indicated whether the radar unit was functioning properly for clocking of speed. Officer Crosby indicated that all tests were completed and that the unit appeared to be functioning properly.

The second witness for the prosecution was Larry Acosta, chief of security for the RMA. He testified that no need existed for yearly recertification of his officers, as that was not required by regulation. He requires his officers to check the radar unit at least three times per day and after every stop of a defendant for speeding. He testified on cross-examination that the radar unit is used by various officers in his department.

Defendant did not present any evidence. After conclusion of argument, the case was taken under advisement.

## II.

Defendant received a violation notice charging him with a violation of 32 C.F.R. Part 634, Appendix C, § C(4).[1] This section states as follows:

> 4. A person found guilty of violating, on a military installation, any state vehicular or pedestrian traffic law or local installation vehicular or pedestrian traffic rule or regulation made applicable to the installation under the provisions of this Directive is subject to a fine of not more than $50 or imprisonment for not more than 30 days, or both, for each violation (40 U.S.C. 318c (reference (d))).

This section incorporates the Colorado traffic code as the basis for the charge. The regulation acts in a similar fashion to the Assimilative Crimes Act. *See,* 18 U.S.C. § 13.

■ Defendant was cited for speeding under Colo.Rev.Stat. § 42–4–1101. That statute is incorporated by 32 C.F.R. Part 634. Such incorporation is not improper. *See, United States v. Boyer,* 935 F.Supp. 1138 (D.Colo.1996); *United States v. Carlson,* 714 F.Supp. 428 (D.Haw.1989).

Defendant raised a number of issues at the end of trial, but only one needs to be discussed. The evidence indicated that Officer Crosby had reacted to Defendant's car after the radar unit emitted an auditory signal. This signal notified the Officer that the vehicle was travelling in excess of the speed limit. Officer Crosby made no visual observations of the exact speed of Defendant, nor was there any clocking of Defendant's speed through use of any police vehicle. The prosecution rested its case on the reading set forth in the radar unit.

In order to find Defendant guilty of speeding, this Court must be satisfied that the radar unit was operating correctly on that day and that a scientific basis existed for accepting the reading from the radar. Since Colorado law is incorporated by 32 C.F.R. Part 634, an examination must be made of applicable statutes and case law decisions concerning speeding cases. Colorado statutes are silent as to acceptance of radar speed results. *See,* Colo.Rev.Stat. § 42–4–1101. Thus, no statutory requirements must be followed before radar results may be admitted and considered by the Court. *See, United States v. Wornom,* 754 F.Supp. 517 (W.D.Va.1991).

Decisions of the Colorado Supreme Court are not binding on this Court, but should be examined carefully. The Colorado Supreme Court has reviewed the issue of radar use in speeding cases on two occasions. In *People v. Walker,* 199 Colo. 475, 610 P.2d 496 (1980), the court was faced with the issue of whether a sufficient scientific foundation had been

---

1. The violation notices does not clearly define the provision of the Code of Federal Regulations allegedly violated. From the Court's review of

32 C.F.R. Part 634, the cited section appears to be the only viable provision which could have been charged.

established for acceptance of the results of the radar. In *Walker*, a police officer "running radar" had calibrated his radar unit through use of a single uncalibrated tuning fork. *Id.* 610 P.2d at p. 497. The court held that this was insufficient for acceptance of the results. The court held that if a single tuning fork was used for checking the calibration of the radar unit, then the tuning fork must have been calibrated within one year of its use in the particular case.

The Colorado Supreme Court in *City of Aurora v. McIntyre*, 719 P.2d 727 (Colo.1986) was presented with the question of what constituted a "one-year period" for calibration of a tuning fork. The court examined this issue in conjunction with its previous ruling.

In *People v. Walker*, 199 Colo. 475, 610 P.2d 496 (Colo.1980), we set forth what is required to provide a legally sufficient foundation to support a conviction based on the use of a radar device. We concluded that where a single tuning fork test is used to calibrate a radar device, the tuning fork must be recertified as accurate within one year of the test. Upon such a showing, the trial court may admit the proffered radar evidence. *Walker*, 610 P.2d at 500. Another method is to require that each radar device be field tested with two or more tuning forks, each set at a different speed. Such a foundation insures the accuracy of the radar device over a range of speeds, and each separate test serves to corroborate the results of the other. *Id.*

The reliability of a radar device must be established by a proper foundation to insure that the device is accurate. We required that a tuning fork used to calibrate the radar device be certified within one year to insure the accuracy of the device. Where there is no evidence to show that the single tuning fork is accurate, its use may only mask the fact that the radar device is itself inaccurate. *Walker*, 610 P.2d at 499. Some minimum foundation is required to insure that the persuasive force of scientific results is based upon the

use of a properly calibrated radar device. *Id.* at 500.

A tuning fork must initially be certified as accurate before its initial use. The fact that a tuning fork is certified after it is used to calibrate a radar device does not significantly erode the evidentiary foundation of the accuracy of the radar device if the tuning fork still meets the applicable standards. A tuning fork may lose its accuracy through age or damage, *People v. Walker*, 610 P.2d at 499, and if the tuning fork is tested as working properly after one year, then it is proper to conclude that the calibrations of the radar device performed within the one year period are accurate. We hold that the "within one year" language in *People v. Walker* means that the recertification of the tuning fork must occur either within the one year before or one year after the radar device is tested.

*Id.* at pp. 728–729. The court held that the state district court on appeal had erred in holding that the one-year period must precede the use of the radar device.

These decisions of the Colorado Supreme Court indicate two important points. First, the court was unwilling to allow use only of internal tests for a radar device. The court has set forth two ways of using tuning forks to verify the accuracy of the radar device. Second, there must be some foundational evidence to establish that the radar device was calibrated properly before any results from the radar will be admitted into evidence. The court has established through its rulings the necessity to provide a foundational check to insure that drivers are not cited improperly based upon an uncalibrated radar device. The Colorado Supreme Court decisions are persuasive to this Court.

■ Several points must be set forth in the present case. First, no outside test was used to calibrate the accuracy of the radar unit on the day in question. There was no evidence of anything having been done to verify the accuracy of the radar unit, except for the so-called internal tests.[2] Second, there was insufficient evidence to establish

---

2. All other federal jurisdictions with which this Court has contact all use on a daily basis a

certified tuning fork to verify the calibration of the radar unit.

that the internal tests were sufficient to insure proper calibration on the date in question. Officer Crosby testified that two of the tests merely verified that all circuits were working and that no light bulbs were burned out. Officer Crosby was unable to provide any evidence as to how the third test verified the actual calibration of the unit.

Third, the radar unit had not been calibrated during a one-year period from the date of the clocking of Defendant. As the Colorado Supreme Court acknowledged in *Walker* and *McIntyre*, a radar device may become inaccurate through use or damage. Frequent certification may provide a basis for acceptance of radar results, where only an internal test is used. Fourth, the certificate of calibration, Government Exhibit # 1, does not provide any indication that the internal test was checked. The certificate reflects only a calibration using an outside measuring device. The Court has no basis for concluding that any internal test was accurate at anytime. That is the reason that a certified tuning fork insures proper calibration of a radar device.

Finally, the testimony of Mr. Acosta indicated that RMA department policy required that a radar unit be checked after each stop of a motorist to insure that the device was operating correctly. The evidence in this case indicated that Officer Crosby used the internal test only at 8:15 a.m. on the day in question. The department's own internal safeguard was not followed.

This Court agrees with the rationale set forth in *Walker* and *McIntyre*. There must be foundational evidence presented to establish the scientific reliability of a radar device. The simplest way of doing so is to utilize a single, certified tuning fork. This will test the accuracy of the radar unit on the day that it is used to clock a motorist. Two tuning forks may also be used as an alternative means of calibration. Absent use of a tuning fork, the burden is placed upon the prosecution to establish a basis for acceptance of an internal test result. No such foundational basis was presented in this case.

As mentioned previously, the prosecution of Defendant rests solely on the radar results. There is no other evidence that would establish Defendant's guilt beyond a reasonable doubt. *See, United States v. Wornom,* 754 F.Supp. at p. 519.

IT IS HEREBY ORDERED that Defendant is found not guilty of the charge in the violation notice, and that this case is dismissed with prejudice.