**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 98-4286

BARRY L. DARAS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-98-79)

Submitted: September 29, 1998

Decided: October 16, 1998

Before ERVIN and WILLIAMS, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard E. Gardiner, Fairfax, Virginia, for Appellant. Helen F. Fahey,
United States Attorney, Jonathan R. Barr, Special Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Barry Daras appeals from a district court order affirming a magistrate judge's judgment order finding Daras guilty, following a bench trial, of driving under the influence of alcohol and with a breath alcohol content of .08 grams or above, in violation of 18 U.S.C. § 13 (1994) (assimilating Virginia Code § 18.2-266), and of speeding, in violation of 32 C.F.R. § 634.25(f) (1998), (assimilating Virginia Code § 46.2-870). The infractions occurred on August 24, 1997, around 2:50 a.m., at Ft. Belvoir, a military installation in Virginia. On that date, Military Police Officer Sean Grier observed Daras drive his vehicle through a posted 35 mph zone of the military base. Grier used a radar detection device to measure Daras' speed at 56 mph, and subsequently stopped him for speeding.

When Grier approached Daras, he noticed that Daras' eyes were bloodshot and that he appeared to be confused. He smelled the odor of alcohol on Daras' breath and noticed an open container of beer in the vehicle. Grier testified that Daras had difficulty getting his driver's license out of his wallet and that his speech was somewhat slurred. Daras told Grier that he had "had a few drinks at the club."

Grier then administered three pre-exit field sobriety tests: the finger count, the alphabet test, and the counting test. Daras was unable to perform two of the three tests accurately. Grier then asked Daras to exit his vehicle. He conducted three post-exit field sobriety tests: the walk and turn test, stand on one leg test, and the horizontal gaze nystagmus test of involuntary eye movement. Grier testified that Daras did poorly on these tests and that the results convinced him that Daras was under the influence of alcohol. Accordingly, he arrested Daras and took him to the military police station, where he used a breathalyser machine called the "Intoxilyzer 5000" to take a sample of Daras' breath. The machine reflected that Daras' breath alcohol content was .10 grams per 210 liters of breath.

On appeal, Daras challenges the admissibility of the breath test, the field sobriety tests, and the evidence offered by the Government to prove that Grier's radar detection unit was properly calibrated. He

alleges that without such evidence, the evidence is insufficient to support his convictions. We review the magistrate judge's evidentiary rulings for an abuse of discretion. See Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1383 (4th Cir. 1995). We must affirm the convictions if, viewing the evidence and inferences in the light most favorable to the government, substantial evidence supports them. See United States v. Singh, 54 F.3d 1182, 1186 (4th Cir. 1995).

Daras contends that the breath test should not have been admitted because the Government failed to present any evidence that the Intoxilyzer 5000 was a scientifically reliable device. He avers that the trial court should have required the Government to prove the scientific validity of the methodology by which the device measures blood alcohol content, using the standards for assessing the reliability of scientific evidence set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). But Daubert merely requires that the proffered scientific evidence be relevant and reliable. Benedi, 66 F.3d at 1384. Daras does not dispute that the evidence is relevant. Moreover, the reliability of the methodology, that is, the scientific technique by which breathalysers measure breath alcohol content, is well established. See California v. Trombetta , 467 U.S. 479, 489 (1984) (recognizing that accuracy of Intoxilyzers has been certified by the National Highway Traffic Safety Administration (NHTSA) since 1973); United States v. Brannon, 146 F.3d 1194, 1196 (9th Cir. 1998) (same); United States v. Reid, 929 F.2d 990, 994 (4th Cir. 1991) (stating that breathalyser is the "best means of obtaining evidence of the breath alcohol content"). We note Daras' contention that our comment in Reid has no bearing on this case because it related to breathalysers in general and not specifically to the Intoxilyzer 5000. While Daras presents no reason to conclude that different breathalyser machines use a different scientific methodology, we note that the device used in Brannon was the same type of breathalyser used in this case, the Intoxilyzer 5000. See Brannon, 146 F.3d at 1195.[1]

_____

[1] Many federal courts hold that Daubert is limited to cases involving novel, unique, or untested scientific evidence. See Thornton v. Caterpillar, Inc., 951 F. Supp. 575, 578 (D.S.C. 1997); Waitek v. Dalkon Shield Claimant's Trust Fund, 934 F. Supp. 1068, 1087-89 n.10 (N.D. Iowa 1996). We need not decide in this case whether Daubert's application is so limited, or whether breathalysers are novel, unique, or untested scientific evidence because we find that the breathalyser used in this case was both relevant and reliable.

Daras further avers that the breathalyser results were inadmissable because the Government failed to comply with an allegedly assimilated Virginia statutory provision requiring proof that any breath test used by the prosecution be conducted by a person with proper training using equipment approved by the Virginia Division of Forensic Science. See Va. Code Ann. § 18.268.9. A federal prosecution under the Assimilative Crimes Act "assimilates state substantive law pertaining to the elements of an offense and its punishment. It does not generally adopt state procedure or rules of evidence." See United States v. Price, 812 F.2d 174, 175 (4th Cir. 1987). Accordingly, courts have held that the failure to follow state procedures relating to the proper administration of breathalysers goes to the weight, and not the admissibility, of the test. See Brannon, 146 F.3d at 1196; United States v. Sauls, 981 F. Supp. 909, 911 (D. Md. 1997).

We note alternatively, that the record in this case indicates that the Government demonstrated the reliability of the equipment and the proper administration of the test. It has already been established that the Intoxilyzer 5000 is a scientifically reliable device for measuring breath alcohol content. Further, the Government submitted into evidence a printout by the machine itself which stated that the machine had been tested and found to be accurate by the Division of Forensic Science on May 23, 1997, approximately three months prior to the date the test was conducted. Officer Grier also testified that he was a certified operator of the machine and that he tested it immediately before Daras' breath test to ensure that it was working properly at the time he administered it. Finally, Daras concedes that Grier has been properly trained to operate the machine, and identifies no error committed in the performance of the test. Accordingly, we find that the magistrate judge properly admitted and relied on the results of the breathalyser test.

Daras next challenges the admissibility of the field sobriety tests, arguing that the Government again failed to show the scientific reliability of such tests under Daubert. With the exception, however, of the horizontal gaze nystagmus (HGN) test, the field sobriety tests were not scientific, as they involved no methodology but rather objective observations of an individual's performance on simple psychomotor tests. There was no need for any expert testimony regarding these tests. See Hulse v. State, 961 P.2d 75, 93 (Mont. 1998) (recog-

4

nizing that the HGN is distinguishable from other field sobriety tests because it is a scientific test). As for the HGN, we need not decide whether such tests are scientifically reliable, [2] because the results of the breathalyser, the remaining field sobriety tests, and Officer Grier's testimony were more than adequate to support Daras' conviction.

Finally, Daras contends that the trial court erred by admitting a Certificate of Calibration attesting to the accuracy of the radar unit used by Officer Grier, and by admitting a Certificate of Accuracy attesting to the accuracy of the 35 mph tuning fork used to calibrate the radar unit. The Government also presented, however, a Certificate of Accuracy for a 65 mph tuning fork which was also used to calibrate the radar unit. Daras raises no objection to the admission of this evidence which, by itself, was sufficient to establish the accuracy of the radar unit and support his speeding conviction. See United States v. O'Shea, 952 F. Supp. 700, 703 (D. Colo. 1997). Moreover, the Government correctly points out that the officer's visual estimate is also sufficient, by itself, to support a conviction. See United States v. Wornom, 754 F. Supp. 517, 519 (W.D. Va. 1991). We therefore affirm the order of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**2** For a survey of the case law discussing the reliability of such tests, see State v. O'Key, 899 P.2d 663 (Or. 1995).

5